UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

WENDELL JERMAINE HOLLIS,

Plaintiff,

-v-

No.
Hon.

MATTHEW FULGENZI, Detroit Police Office; RICHARD A. BULLARD, Detroit Police Officer, sued in their individual capacities,

Defendants.

_______________________________/

## **COMPLAINT FOR DAMAGES AND JURY DEMAND**

I. *Introduction*:

Plaintiff was falsely arrested and falsely charged with two misdemeanor violations of the law and maliciously prosecuted as to these two false charges.

II. *Parties*

1. Plaintiff Wendell J. Hollis is a citizen of the State of Michigan and resides in the City of Detroit, Michigan.

2. Defendant Matthew Fulgenzi was a Detroit Police officer and he was acting under color of state law at all relevant times. He is sued in his individual capacity.

3. Defendant Richard A. Bullard was a Detroit Police officer and he was acting under color of state law at all relevant times. He is sued in his individual capacity.

III. *Jurisdiction and Venue*

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. 1331 and 1343. Venue is proper since all events occurred within this district, 28 U.S.C. 1391.

IV. *Statement of Facts*

5. On September 6, 2007, Plaintiff was at 10047 Ward Street, Detroit, Michigan, in the process of moving his sister's vehicle so that he could park in the driveway behind her vehicle.

6. After he parked his van in the driveway he walked across the street to his sister's car and backed his sister's car into the driveway. This is when some males ran up on him with a gun pointed at him.

7. One of the males grabbed Plaintiff and pulled him from his sister's car.

8. Once he determined that these males were police officers, Plaintiff stated that he had a concealed weapon on him and that he had a permit to carry it. The weapon was removed from Plaintiff along with his holster and the other magazine that was in the holster.

9. When he asked what was going on, the police officers yelled at him to shut the "fuck up."

10. Plaintiff was than handcuffed by Defendant Fulgenzi.

11. Defendant Fulgenzi accused Plaintiff of being Terrell Carter, which Plaintiff denied and said he was Wendell Hollis.

12. Plaintiff's sister and others told these Defendants that Plaintiff was not Terrell Carter but these Defendants did not want to hear this.

13. Defendant Fulgenzi and another officer placed Plaintiff against the back of his sister's car.

14. While against the back of the car Plaintiff informed Defendant Fulgenzi that he had identification in his wallet. Defendant Fulgenzi told Plaintiff to shut the "fuck up," no one had asked him any questions.

15. In response to Plaintiff's sister question as to what was going on, Defendant Fulgenzi told her that Plaintiff had just discharged a gun at a nightclub in Livonia.

16. Both Plaintiff and his sister tried to explain to Defendant Fulgenzi that Plaintiff could not have done what was alleged.

17. Plaintiff was then placed in the back seat of a police car.

18. While being placed in the back of the police car, Defendant Fulgenzi shoved Plainitff in the chest since Plaintiff was not moving fast enough to get in the back seat.

19. Plaintiff yelled out when Defendant shoved him in the chest and that brought the attention of the family members and neighbors who asked what was happening.

20. While confined in handcuffs in the back seat of the police care, Defendant Fulgenzi again questioned Plaintiff about him being Terrell Carter and told Plaintiff he was not Wendell Hollis.

21. Prior to Defendant Fulgenzi running a lien check, he told Plaintiff that there is no one by the name of Wendell Hollis. Defendant Fulgenzi then said if Plaintiff was lying he was going to jail.

22. At this time, Defendant Fulgenzi had the wallet of the Plaintiff's that contained driver's license, concealed weapon permit, credit cars, nursing license, social security card, AAA cards and other identifications.

23. The lien check by Defendant established that Plaintiff was not Terrell Carter.

24. When Plaintiff asked whether he could be released since he was not Terrell Carter, both Defendants said no. Defendant Bullard also stated that Plaintiff was going to jail.

25. When Plaintiff asked why he was going to jail, Defendant Bullard did not say anything to Plaintiff.

26. When Plaintiff's neighbor asked why Plaintiff was going to jail, Defendant Bullard stated Plaintiff was going to jail because he hit his partner (Defendant Fulgenzi).

27. When Plaintiff's sister asked Defendant Fulgenzi while Plaintiff was being taken to jail, Defendant Fulgenzi said because Plaintiff had assaulted him.

28. Plaintiff was taken to the Southwestern Precinct, located at 13530 Lesure, Detroit, Michigan, and he was then booked for assaulting Defendant Fulgenzi and later charged with violation of a firearms ordinance.

29. Both Defendants knew that Plaintiff had not engaged in any assaultive behavior nor violated any ordinances when they initiated these charges against him.

30. Defendant intentionally, willfully and with malicious created a false story that Plaintiff had assaulted a police officer and that he had violated the concealed weapon ordinance.

31. Even though Defendants knew that Plaintiff had not violated the law, they falsely changed him with two misdemeanors.

32. Plaintiff did not engage in any resisting or obstructing of his arrest except to ask why and to verbally protest that he was not Terrell Carter.

33. The first misdemeanor was for simple assault and battery, which carried a potential penalty of one year in jail and a fine of $1,000. The second misdemeanor was for Violation of Firearms Ordinance (State Statute), which requires a person carrying a concealed weapon to inform the police office when encountering such office. The punishment is a fine and the lost of the carrying a concealed weapon permit.

34. The report prepared by Defendant Fulgenzi states that Plaintiff informed the police that he was carrying a weapon and had a gun permit.

35. On information and belief, Plaintiff spent three-days in a holding cell at the Southwestern Precinct and then once bond was set he sent another day at the Dickerson Correctional Facility before he was released on bond of $1,000 cash.

36. The conditions in the holding cell at the Southwestern Precinct were barbaric, in that Plaintiff was not allowed to shower for three days, he was required to sleep on concrete with no blankets or padding, and the meals consisted of cold sandwiches and/or cookies and juice. The cell was overcrowded.

37. These Defendants subjected plaintiff to these conditions only as a result of the false arrest.

38. On information and belief, once at the Southwestern Precinct Defendant Bullard became aware that Defendant Fulgenzi was issuing a report stating that Plaintiff had assaulted him and had failed to comply with the ordinance pertaining to those carrying a concealed weapon. He was also aware that Defendant Fulgenzi was going to request that Plaintiff be prosecuted on both of these charges.

39. Even though Defendant Bullard factually knew that Plaintiff had not engaged in the behavior alleged by his partner, Defendant Fulgenzi failed to take steps to prevent these false charges from being filed against the Plaintiff.

40. On information and belief, Defendant Bullard read the report written by Defendant Fulgenzi and knew that the report contained mostly lies and yet failed to take actions to prevent false charges that led to the false imprisonment and malicious prosecution of Plaintiff.

41. Plaintiff was required to hire an attorney to defend against these two charges. He paid the attorney $1,300 for defending him.

42. On November 25, 2009, a trial before the Hon. Ronald Giles was held. After hearing testimony, the Judge found Plaintiff not guilty of assaulting the Defendant Fulgenzi.

43. The Hon. Giles found no probable cause existed that Plaintiff had committed an assault and battery or attempted an assault and battery.

44. On January 26, 2010, a trial was to be held on the Violation of Firearms Ordinance but the complaining witness refused to testify and the case was dismissed.

45. The complaining witness was Defendant Fulgenzi and he was in the courtroom that day.

46. After resolving both of these false charges that were brought by the Defendants, Plaintiff sought to obtain his fingerprint and arrest records but were refused by the Police Department.

47. After resolving both of these false charges that were brought by the Defendants, Plaintiff sought to obtain his weapon from the police but has been given a run around by the different police agencies that he has talked to. Plaintiff has not been able to recover his weapon, two magazines and holster.

48. If Defendants had not brought false charges against him, Plaintiff would not have been falsely imprisoned.

49. If Defendants had not brought false charges against him, Plaintiff would not have been maliciously prosecuted.

50. If Defendants had not brought false charges against him, Plaintiff would not have had his weapon taken from him.

51. These Defendants' actions resulted in false charges being filed against the Plaintiff, his being falsely imprisoned, and his being maliciously prosecuted.

52. Plaintiff is a nursing assistance and by law cannot have even an arrest on his record if he wishes to work in this field. Due to these Defendants bringing these false changes, Plaintiff has suffered mental anguish and emotional anxiety as to whether he would ever be allowed to work in his chosen profession. Defendants' actions have intentionally inflicted emotional distress on the Plaintiff.

53. The actions of these Defendants were done wantonly, willfully and maliciously.

## V. *Causes of Actions*

First Claim – False Arrest

54. Plaintiff realleges and incorporates paragraphs 1-53 herein.

55. Plaintiff had a Fourth Amendment Right not to be subjected to false arrest by the actions of these Defendants.

56. These Defendants knew at the time of the arrest of Plaintiff that probable cause did not exist as to the arrest for assault and battery and/or the violation of the firearms ordinance.

57. Plaintiff's right to be secured in his person in not being falsely arrested was violated by the actions of these Defendants.

Second Claim – False Imprisonment

58. Plaintiff realleges and incorporates paragraphs 1-57 herein.

59. Plaintiff had a Fourth Amendment Right not to be subjected to false imprisonment by the actions of these Defendants.

60. These Defendants knew that at the time they placed him in confinement there did not exist a legal basis for such confinement, in fact, these Defendants knew that they had lied to create a situation where they could imprison the Plaintiff.

61. Plaintiff's right not to be falsely imprisoned was violated by these Defendants.

Third Claim – Malicious Prosecution

62. Plaintiff realleges and incorporates paragraphs 1-61 herein.

63. Plaintiff had a constitutional right not to be subjected to malicious prosecution.

64. The Defendants falsely instituted charges against the Plaintiff, which were not based upon probable cause, with malice, and which charges were terminated in his favor.

Fourth Claim – Civil Conspiracy

65. Plaintiff realleges and incorporates paragraphs 1 – 64.

66. Plaintiff has a constitutional right that the Defendants would not engage in a conspiracy, which would result in his being falsely arrested, falsely imprisoned and maliciously prosecuted.

67. Defendant Bullard was present, and with knowledge, at all times when Defendant Fulgenzi took steps to falsely arrest, falsely imprisoned and maliciously prosecuted the Plaintiff and failed to take steps to prevent the blatant violations the constitution.

68. In fact, Defendant Bullard engaged in this conspiracy by claiming that Plaintiff had assaulted his partner.

69. The false arrest, false imprisonment, and malicious prosecution would resulted, in part, from the conscience refusal of Defendant Bullard to step forward and inform his supervisors and/or the prosecutors that the factual claims by Defendant Fulgenzi were lies.

70. Plaintiff's constitutional rights were violated by the actions and failure to act by these Defendants when they engaged in a civil conspiracy.

WHEREFORE, Plaintiff is requesting that this Court grant the following relief:

a. Assume jurisdiction of this matter;

b. Issue a declaratory judgment that Plaintiff's constitutional rights were violated;

c. Grant a jury trial as requested by the Plaintiff;

d. If Plaintiff's weapon, two magazines and holster were destroyed that he be paid the purchase price of these or that they be ordered returned to him;

e. Award compensatory and punitive damages;

f. Award attorney's fees and costs; and

g. Grant any other relief that is just and equitable.

Respectfully submitted,

/s/ Daniel E. Manville
Daniel E. Manville
Counsel for the Plaintiff
P.O. Box 20321
Ferndale, MI. 48220
248-890-4720 (office)
248-556-5598 (fax)
daniel.manville@gmail.com